REBEL OIL COMPANY, INC., and Auto Flite Oil Company, Inc., Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY, Defendant.

No. CV–S–90–076–PMP (RJJ)

United States District Court, D. Nevada.

Dec. 27, 1991.

---

**11.** The state courts are capable of fairly and fully adjudicating the federal issues that come before them.

See also 808 F.Supp. 1464.

William H. Bode, William Bode & Associates, Washington, DC, Donald J. Campbell, Las Vegas, NV, for plaintiffs.

Donald C. Smaltz, Morgan, Lewis & Bockuis, Los Angeles, CA, Thomas F. Kummer, Vargas & Bartlett, Las Vegas, NV, for defendant.

## *ORDER*

PRO, District Judge.

On July 1, 1991, ARCO filed a Motion for Judgment on the Pleadings Regarding Counts Two and Four of the Second Amended Complaint (Request for Oral Argument) (# 182). Plaintiffs filed their Opposition (# 198) on July 16, 1991. On July 26, 1991, ARCO filed its Reply (# 211).

Count Two of Plaintiffs' Second Amended Complaint is based on the federal Gasohol Competition Act, 15 U.S.C. § 26a(a)(2). Count Four is based on the Nevada Deceptive Trade Practices Act, Nevada Revised Statute section 598.410. ARCO alleges that Plaintiffs do not have standing to invoke the protection of these statutes.

### I. GASOHOL COMPETITION ACT

■ In Count Two of their Second Amended Complaint, Plaintiffs allege that ARCO violated the federal Gasohol Competi-

tion Act, 15 U.S.C. sec. 26a(a)(2), by making false statements in Las Vegas that gasohol was an unsafe and inefficient fuel at the same time it was selling gasohol in other markets. Plaintiffs allege that these false statements unreasonably discriminated against Plaintiffs and other competitors who were marketing gasohol in this market and unreasonably limited Plaintiffs' gasohol sales. Plaintiffs additionally allege that ARCO's behavior furthered its predatory scheme to monopolize the Las Vegas market, and denied Las Vegas consumers the benefits of the less expensive, more ecologically sound fuel.

ARCO seeks judgment regarding Count Two of the Second Amended Complaint on the basis that Plaintiffs are not within the class of persons protected by the Gasohol Competition Act, 15 U.S.C. section 26a(a)(2),[1] and that they therefore do not have standing to bring a claim under the Act. Specifically, ARCO argues that only franchisees and retail dealers who buy from the petroleum supplier alleged to have violated the Act have standing to sue.

Plaintiffs respond that the general language of the statute provides that any person who unreasonably discriminates against or limits the sale of gasohol violates the Act, and that anyone who sells gasohol and is adversely affected by the discriminatory or limiting behavior has standing to sue.

The issue before the Court appears to be one of first impression. When interpreting a federal statute without the aid of relevant precedent, a court must "first look to the language of the controlling statute[ ], and second to legislative history." *Central Mont. Elec. v. Admin. of Bonneville Power,* 840 F.2d 1472, 1477 (9th Cir.1988). Here, the language of the statute is ambiguous. Both interpretations advanced by the parties are supported by a cursory reading of the

Act. Thus, the Court will consider the relevant legislative history to determine the congressional intent underlying the enactment of the Gasohol Competition Act. *See United States v. Taylor,* 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987).

When articulating the policy behind the Act, the House of Representatives [2] declared in relevant part:

The purpose of H.R. 7973 is to make absolutely certain that retailers and distributors of synthetic fuels, including gasohol, will not be discriminated against by their suppliers and/or owners of their retail stations because of sales of synthetic fuels. This legislation eliminates what appears to be a significant impediment to the marketing of gasohol and other synthetic fuels as they are developed.

... It appears that in the past several major oil companies, which did not themselves produce or market gasohol, refused to permit their franchisees to utilize company pumps and tanks for the sale of gasohol. The companies refused to allow use of their credit system for gasohol sales. Moreover, some companies threatened to terminate a franchisee's contract if the franchisee even offered to sell gasohol.

... The bill is not designed to force any individual or company into marketing, selling or purchasing gasohol or other synthetic fuel, nor is it designed to place burdensome requirements on those companies that choose not to market gasohol themselves. *H.R. 7873 is simply intended to remove any potential obstacles that may be raised by conventional fuel producers or suppliers to franchisees who desire to market synthetic fuels.*

---

1. In relevant part, section 26a(a)(2) provides:
   (a) ... it shall be unlawful for any person engaged in commerce, in the course of such commerce, directly or indirectly to impose any condition, restriction, agreement, or understanding that—
   (2) otherwise unreasonably discriminates against or unreasonably limits the sale, resale, or transfer of gasohol or other synthetic motor fuel of equivalent usability in any case in which such synthetic or conventional mo-

   tor fuel is sold for use, consumption, or resale within the United States.
   15 U.S.C. § 26a(a)(2) (1980).

2. While the bill which passed Congress was the Senate bill S.2251, and not the House bill H.R. 7873, by the time of its passage the Senate had amended the bill's language to contain the text of the House bill. The legislative history as quoted accompanied the House bill.

H.R.Rep. No. 1464, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 5393–94 (emphasis added). Given this clear statement of Congressional intent, combined with the ambiguity present in the statutory language, the Court finds that the Gasohol Competition Act confers standing only upon franchisees or those who have directly acquired petroleum products from the supplier accused of the discriminatory or limiting behavior.

Rebel's argument that it has standing to sue on the basis of the Act is simply not supported by law. Accordingly, the Court will grant ARCO's Motion for Judgment on the Pleadings (# 182) as it relates to Count Two of Plaintiffs' Second Amended Complaint.

■ ARCO has moved this Court to certify its decision in accordance with Federal Rule of Civil Procedure 54(b).[3] A decision to certify as final an order pertaining to less than all claims rests with the sound discretion of the Court. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980). The ultimate decision must rely on (1) whether the issues or parties requesting finality are sufficiently severable or whether there remains some overlap of issues or parties with those which remain in the case, and (2) whether there is any just reason for delay.

■ Because the Court finds that the basis on which Count Two is being dismissed is sufficiently severable from other issues remaining before the Court, and because the Court finds that there is no just reason for delay, the Court will direct the Clerk of Court to forthwith enter judgment in favor of ARCO with respect to Count Two of Plaintiffs' Second Amended Complaint.

## II. DECEPTIVE TRADE PRACTICES ACT

■ Count Four of the Second Amended Complaint alleges that ARCO deliberately violated the Nevada Deceptive Trade Practices Act, N.R.S. 598.410, by making false and misleading statements, descriptions, and representations concerning the gasoline offered for sale by Rebel. ARCO claims that Plaintiffs do not have standing to invoke the protection of the Deceptive Trade Practices Act in an individual suit. Specifically, ARCO states that because the state legislature set up an extensive governmental scheme for enforcing the legislation, the Court should not infer a private right of action.

While N.R.S. 598.410 defines what activity amounts to a "deceptive trade practice" under Nevada law, N.R.S. 598.490 and 41.600 are relevant to a determination of whether competitors have standing to invoke section 598.410's protection.

Plaintiffs correctly claim that section 41.-600 [4] creates a right to sue on behalf of all victims of consumer fraud. However, despite the broad language of that statute, the Court is not persuaded that competitors are "victims" within the meaning of section 41.-600. Indeed, the parties have provided the Court with no analysis on this issue which would support such a finding that they are.

Section 598.490 [5] appears to offer some support to Plaintiffs' position that they have

---

**3.** Federal Rule of Civil Procedure 54(b) provides:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is

subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
Rule 54(b).

**4.** Section 41.600 provides in relevant part:
1. An action may be brought by any person who is a victim of consumer fraud.
2. As used in this section, "consumer fraud" means:
... (c) A deceptive trade practice as defined in NRS 598.410 to 598.414, inclusive, and section 1 of this act.
N.R.S. § 41.600 (1989).

**5.** Section 598.490 provides:
1. Evidence that a person has engaged in a deceptive trade practice is prima facie evi-

a right to sue ARCO under the Deceptive Trade Practices Act. Again, however, no party has analyzed the impact section 598.-490 might have on the issues currently before the Court.

The Court will, therefore deny ARCO's Motion for Judgment on the pleadings as it relates to Count IV of Plaintiffs' Second Amended Complaint.

## ORDERS

IT IS THEREFORE ORDERED that ARCO's Motion for Judgment on the Pleadings Regarding Count II (# 182) is granted, and Judgment is hereby entered in favor of ARCO and against Plaintiff Rebel Oil as to the allegations set forth in Count II of Plaintiffs' Second Amended Complaint. The Clerk of Court shall forthwith enter Judgment in favor of ARCO and against Rebel Oil accordingly.

IT IS FURTHER ORDERED that Defendant ARCO's Motion for Judgment on the Pleadings Regarding Count IV of Plaintiffs' Second Amended Complaint (# 182) is denied.

IT IS FURTHER ORDERED that the Court's stipulated Order (# 196) deferring discovery on Count IV of Plaintiffs' Second Amended Complaint pending resolution of Defendant ARCO's Motion for Judgment on the Pleadings is hereby vacated and the parties shall forthwith proceed with discovery regarding said Count IV.

dence of intent to injure competitors and to destroy or substantially lessen competition.
2. The deceptive trade practices listed in NRS 598.410 to 598.414, inclusive, are in addition to and do not limit the types of unfair trade practices actionable at common law or defined as such in other statutes of this state. N.R.S. § 598.490 (1989).